RANDAZZA LEGAL GROUP, PLLC
Marc J. Randazza (NV Bar No. 12265)
Alex J. Shepard (NV Bar No. 13582)
4035 S. El Capitan Way
Las Vegas, Nevada 89147
Telephone: 702-420-2001
Facsimile: 305-437-7662
ecf@randazza.com

*Attorneys for Defendant,*
*Consumer Opinion LLC*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| ABBEY DENTAL CENTER, INC., a Nevada Corporation, | Case No.: 2:15-cv-02069-GMN-PAL |
| Plaintiff, | **DEFENDANT CONSUMER OPINION LLC'S SPECIAL MOTION TO DISMISS PURSUANT TO NRS 41.660 AND MOTION FOR SUMMARY JUDGMENT** |
| v. | |
| CONSUMER OPINION LLC, a Nevada Limited liability company; DOES 1-10; and ROE ENTITIES 1-10, inclusive, | |
| Defendants. | |

Defendant Consumer Opinion LLC hereby files its Special Motion to Dismiss pursuant to NRS 41.660 as to Claims 1-4 in Plaintiff Abbey Dental, Inc.'s Complaint (ECF No. 1), and incorporates a Motion for Summary Judgment pursuant to Fed. R. Civ. P. 56 as to Claim 5 in the Complaint. This Motion is based upon the attached Memorandum of Points and Authorities, the papers and pleadings on file herein, and any oral argument permitted by this Court.

. . .

. . .

. . .

## MEMORANDUM OF POINTS AND AUTHORITIES

## 1.0    INTRODUCTION

This case is about a company that doesn't want people to read negative reviews about it, so it decided to get creative to try and suppress those negative reviews with an unsupportable lawsuit. Plaintiff, Abbey Dental Center, Inc. ("Abbey"), may be the greatest dentists in the world – but, apparently, many of their former patients feel otherwise. They left negative consumer reviews on the Defendant's consumer review website.

Abbey would prefer that the public not be aware of these negative opinions. But instead of taking the more direct and costly (and legally correct) approach of suing the authors of the negative reviews for their statements, Abbey decided to go after the platform for these reviews, Consumer Opinion LLC ("Opinion"). Abbey knows that it cannot pursue claims against Opinion based on the contents of the reviews in question, as Opinion would be immune from such claims under 42 U.S.C. § 230. *See e.g.*, *Nevada Corporate Headquarters, et al. v. Pissed Consumer*, Case No. 13A003332, Las Vegas Justice Court (Jan. 23, 2014), attached as *Exhibit A* to Declaration of Michael Podolsky ["Podolsky Decl."], attached hereto as **Exhibit 1**; *see also Ascentive, LLC v. Opinion Corp.*, 842 F. Supp. 2d 450 (E.D.N.Y. 2011); *and see Roca Labs, Inc. v. Consumer Op. Corp.*, 140 F. Supp. 3d 1311 (M.D. Fla. 2015). That is why Abbey brings these creative (but unsupportable) claims here, asserting that providing basic information of the company a consumer review web page is about constitutes unfair business practices, intellectual property infringement, and fraud.

The purpose of this suit is to remove a source of consumer information about a company, or to make such information harder to obtain. It is a Strategic Lawsuit Against Public Participation ("SLAPP" suit), and the Nevada legislature created a substantive immunity from such lawsuits in the form of the Nevada Anti-SLAPP

statute. The Court should dismiss Abbey's state law claims, with prejudice, award Opinion its reasonable attorneys' fees incurred in defending itself from this suit, and impose a sanction of $10,000 on Abbey to deter it and other companies from filing suits such as this.

Opinion additionally seeks summary judgment as to Abbey's claim under 15 U.S.C. § 1125(a), as this claim is frivolous on its face, and no amount of discovery or amendment could present a factual issue requiring trial. Opinion seeks separate relief under this rule because Nevada's Anti-SLAPP statute is substantive in nature and thus does not apply to federal claims. However, since an Anti-SLAPP motion is dealt with as a motion for summary judgment, it is appropriate to dispense with all claims in one motion.

## 2.0    FACTUAL BACKGROUND AND LR 56-1 STATEMENT OF FACTS

Opinion owns and operates the web site <pissedconsumer.com>, which provides a forum for Internet users to review professionals or businesses and provide their opinions about them, both positive and negative. (*See* Pissed Consumer "About Us" page, attached as **Exhibit 2**.)[1] The site provides a valuable service by allowing potential customers of a business to inform themselves about a given business and its competitors, and also to serve as a platform for resolving complaints between a consumer and a business. (*See id*.)

Abbey is a company that provides dental services to the general public. (*See* <abbeydental.com> home page, attached as **Exhibit 3**.) It also, according to consumers who have shared their experience with it, does not do a very good job of providing these services; the company has 33 reviews of Opinion's web site, most (if not all) of which are negative. (*See* "Abbey Dental" review page on

---

[1]    Available at: <https://www.pissedconsumer.com/static/about-us.html> (last accessed Dec. 7, 2016).

Special Motion to Dismiss Pursuant to NRS 41.660 and Motion for Summary Judgment
2:15-cv-02069-GMN-PAL

<pissedconsumer.com>, attached as **Exhibit 4**.)[2] The company has received only slightly more favorable reviews on the consumer review web site <yelp.com>. (*See* "Abbey Dental" <yelp.com> review page, attached as **Exhibit 5**.)[3]

The domain name for Opinion's web site is <pissedconsumer.com>. As an organizational necessity, and to provide Internet users with information about which company a given review page is about, it includes the name of a reviewed business in the web site's sub-domains, for example <abbey-dental.pissedconsumer.com>. (*See* **Exhibit 2**.) It is industry practice for consumer review and consumer information web sites to include the name of a company in the Uniform Resource Locator ("URL") for a page containing reviews about that company. For Abbey Dental, <yelp.com> uses <yelp.com/biz/abbey-dental-center-las-vegas>. (*See* **Exhibit 5**).

The consumer review web site <ripoffreport.com> uses the construction <ripoffreport.com/reports/specific_search/abbey%20dental>. (*See* Abbey Dental <ripoffreport.com> review page, attached as **Exhibit 6**).

The Better Business Bureau uses the construction <bbb.org/southern-nevada/business-reviews/dentists/abbey-dental-center-in-las-vegas-nv-60892>. (*See* <bbb.org> Abbey Dental page, attached as **Exhibit 7**.)

Angie's List uses the construction <angieslist.com/companylist/us/nv/las-vegas/abbey-dental-reviews-9130791.htm>. (*See* <angieslist.com> Abbey Dental page, attached as **Exhibit 8**.)

---

[2] All of these reviews are authored by third-party users of <pissedconsumer.com>; Opinion does not create any of the reviews. (*See* Podolsky Decl. at ¶¶ 4-5.)

[3] Available at <https://www.yelp.com/biz/abbey-dental-center-las-vegas> (last accessed Dec. 7, 2016).

Additionally, to ensure that Internet users are capable of finding the reviews on its web site, Opinion provides search result copy for use by search engines such as Google. The copy for its page about Abbey is "[number of reviews] ABBEY DENTAL complaints and reviews @Pissed Consumer." (*See* ECF No. 1-1 at 2.)[4] This type of construction in Google ad copy is also common with consumer review and information web sites. The Better Business Bureau uses "Abbey Dental Center, Inc. – Better Business Bureau." (ECF No. 1-1 at 2.) Angie's List uses "Abbey Dental Center – Las Vegas, NV 89119 – Angies List." (*Id*.) Yelp® uses "Abbey Dental – 61 Photos & 131 Reviews." (*See* Google search results for "abbey dental," attached as **Exhibit 9**.)

Though it provides a valuable public service by allowing consumers to share their opinions about a business for free, Opinion is itself a business and needs to make money to continue providing this service. For this reason, it allows automated advertising on its web site. Opinion does not choose or create the advertising links on the site, however; they are automatically generated by a third party and are targeted at the search history of a given visitor. (*See* Podolsky Decl. at ¶¶ 9-10.) For example, if a user does not work as counsel for a dental services business, they are not likely to come across advertisements for dental services. (*See* **Exhibit 4**; *see also* <archive.org>[5] record of <abbey-dental.pissedconsumer.com> dated June 26, 2015, attached as **Exhibit 10**.)

---

[4] This copy changes based on the number of reviews posted to <pissedconsumer.com>. *Exhibit A* to Abbey's Complaint shows 5 reviews, while current search results show 33 reviews.

[5] <archive.org> is a web site that hosts a feature called the "Wayback Machine" that allows a user to view prior, archived versions of a given web site.

Special Motion to Dismiss Pursuant to NRS 41.660 and Motion for Summary Judgment
2:15-cv-02069-GMN-PAL

**3.0     LEGAL STANDARDS**

    **3.1     NRS 41.660**

Under Nevada's Anti-SLAPP statute, NRS. 41.635 *et. seq.*, if a lawsuit is brought against a defendant based upon the exercise of its First Amendment rights, the defendant has substantive immunity from suit unless the plaintiff can meet the burden required under the statute. Evaluating the Anti-SLAPP motion is a two-step process. The Movant bears the burden on the first step, and the Non-Moving party bears the burden on the second. *See John v. Douglas County Sch. Dist.*, 125 Nev. 746, 754 (Nev. 2009).

First, the defendant must show, by a preponderance of the evidence, that the plaintiff's claim is "based upon a good faith communication in furtherance of the right to petition or the right to free speech in direct connection with an issue of public concern." NRS 41.660(3)(a). One of the specific statutory categories of protected speech is "[c]ommunication[s] made in direct connection with an issue of public interest in a place open to the public or in a public forum, which is truthful or is made without knowledge of its falsehood." NRS 41.637(4).

Second, once the defendant meets its burden on the first prong, the burden then shifts to the plaintiff, which must make a sufficient evidentiary showing that it has a probability of prevailing on its claim. NRS 41.660(3)(b); *see also John*, 125 Nev. at 754.

Federal courts treat Anti-SLAPP motions as a species of a motion for summary judgment. *See Haack v. City of Carson City*, No. 3:11-cv-00353-RAM, 2012 U.S. Dist. LEXIS 120137, at *9 (D. Nev. Aug. 22, 2012); *Las Vegas Sands Corp. v. First Cagayan Leisure & Resort Corp.*, No. 2:14-CV-424 JCM (NJK), 2016 U.S. Dist. LEXIS 101028, at *6 (D. Nev. Aug. 2, 2016) (stating "[a]lthough called a "motion to dismiss," anti-SLAPP motions are treated like motions for summary judgment.");

*Rogers v. Home Shopping Network, Inc.*, 57 F. Supp. 2d 973 (C.D. Cal. 1999) (same).

Due to a relative dearth of case law applying Nevada's Anti-SLAPP statute, Nevada courts look to case law applying California's Anti-SLAPP statute, Cal. Code Civ. Proc. § 425.16, which shares many similarities with Nevada's law. *See John*, 125 Nev. at 756 (stating that "we consider California case law because California's anti-SLAPP statute is similar in purpose and language to Nevada's anti-SLAPP statute"); *see also* NRS 41.665(2) (defining the plaintiff's *prima facie* evidentiary burden in terms of California law.)[6]

To the extent federal procedural rules take over, Fed. R. Civ. P. 56 works just fine with the goals of the SLAPP statute, as discussed below.

### 3.2    Summary Judgment

The Court is well aware of summary judgment standards, and Opinion will not waste the Court's time by repeating them in detail here.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986).

The goals of the federal summary judgment rule are consistent with the goals of Anti-SLAPP statutes – to provide for the early, speedy disposition of "meritless first amendment cases aimed at chilling expression through costly, time-consuming litigation." *Batzel v. Smith*, 333 F.3d at 1023-24; *see also Seelig v. Infinity*

---

[6]  The Nevada Legislature specifically provides for California Anti-SLAPP jurisprudence to serve as the basis for interpreting Nevada's Anti-SLAPP law:

> When a plaintiff must demonstrate a probability of success of prevailing on a claim pursuant to NRS 41.660, the Legislature intends that in determining whether the plaintiff "has demonstrated with prima facie evidence a probability of prevailing on the claim" the plaintiff must meet the same burden of proof that a plaintiff has been required to meet pursuant to California's anti-Strategic Lawsuits Against Public Participation law as of the effective date of this act.

*Broad. Corp.*, 97 Cal. App. 4th 798, 806 (Cal. Ct. App. 2002) (stating that "[t]he goal is to eliminate meritless or retaliatory litigation at an early stage of the proceedings").

It is important to dispose of meritless cases implicating protected speech early. "[B]ecause unnecessarily protracted litigation would have a chilling effect upon the exercise of First Amendment rights, speedy resolution of cases involving free speech is desirable." *Good Government Group, Inc. v. Superior Court of Los Angeles County*, 22 Cal.3d 672, 685, 586 P.2d 572, 578 (Cal. 1978) citing *Dombrowski v. Pfister*, 380 U.S. 479, 486-487 (1965).

Thus, summary judgment is deemed to be a "favored" remedy in defamation[7] cases. Summary judgment is particularly appropriate in cases involving free speech rights. "Were not summary judgment granted in proper cases, the threat of protracted litigation might have a chilling effect upon the full and free exercise of the First Amendment . . . ." *Brudwick v. Minor*, 2006 US. Dist. LEXIS 51608, *63 (D. Colo. July 13, 2006) (citations omitted).

## 4.0   ARGUMENT AS TO SUMMARY JUDGMENT

All of Abbey's claims share the same basic allegations: Opinion uses Google ad copy that incorporates Abbey's trademark, Opinion uses a sub-domain that incorporates Abbey's trademark, and Opinion's web page for "Abbey Dental" contains advertisements and user-created content critical of Abbey. Accordingly, although Abbey asserts five causes of action, the same basic arguments establish why all of Abbey's claims fail and cannot be salvaged.

---

[7]   While this is not a defamation case in name, Abbey has clearly attempted to plead around such a claim in a cynical effort to avoid 47 U.S.C. § 230, but its efforts can not evade the immunity from suit provided by the Anti SLAPP statute.

RANDAZZA | LEGAL GROUP

### 4.1    Elements of a 15 U.S.C. § 1125(a) Claim

Abbey's fifth claim for relief accuses Opinion of trademark infringement under Section 43(a) of the Lanham Act.  This section provides that anyone is liable in a civil action who

> uses in commerce any . . . name . . . or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which - (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person.

A defendant violates this section by misrepresenting his own services as someone else's or, conversely, representing someone else's services as his own.  *See Jurin v. Google, Inc.*, 695 F. Supp. 2d 1117, 1121 (C.D. Cal. 2010).  In a false designation of origin claim, the word "origin" refers to a false or misleading suggestion as to "the producer of the tangible goods that are offered for sale." *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 28, n.1 (2003).  To be liable, the defendant must represent that it provides the services of the plaintiff. *See id*. at 31.

To prevail on a trademark infringement claim, a plaintiff must show "1) that a mark is owned and associated with [the plaintiff]; and 2) the defendants' use of the mark is likely to cause confusion or mistake among the general public."[8] *Perfect 10, Inc. v. Cybernet Ventures, Inc.*, 213 F. Supp. 2d 1146, 1187 (C.D. Cal. 2002).  While Opinion does not concede that Abbey has a valid trademark, for

---

[8]   Though it is not an element of an infringement claim, Abbey also alleges at several points in its Complaint that Opinion is diverting Internet users to Abbey's competitors by providing advertising links on its web site.  Even if profit motive were an element of an infringement claim, however, these allegations would not help Abbey, as Opinion does not create these advertising links, and they are tailored to the search patterns of visitors.  (*See* Podolsky Decl. at ¶¶ 9-10.)  Abbey most likely saw such advertisements because it offers dental services and, presumably, performs a great number of Internet searches about dentistry.

the sake of simplicity it will assume that this is the case solely for the purpose of this motion.

The most essential element of an infringement claim is likelihood of confusion.  Courts may determine likelihood of confusion as a matter of law on a motion for summary judgment.  *See Murray v. Cable Nat'l Broad Co.*, 86 F.3d 858, 859 (9th Cir. 1996).

To show a likelihood of confusion, a plaintiff must provide some evidence that "the similarity of the marks is likely to confuse customers about the source of the products." *Abercrombie & Fitch Co. v. Moose Creek, Inc.*, 486 F.3d 629, 633 (9th Cir. 2007).  And there must be a likelihood of confusing "an appreciable number of people as to the source of the product," rather than one or two people. *Entrepreneur Media, Inc. v. Smith*, 279 F.3d 1135, 1151 (9th Cir. 2002). The plaintiff "must demonstrate likely confusion, not mere diversion."  *Network Automation, Inc. v. Advanced Systems Concepts, Inc.*, 638 F.3d 1137, 1149 (9th Cir. 2011).  '"Likelihood of confusion' signifies more than a mere possibility." *1-800 Contacts, Inc. v. Lens.com, Inc.*, 755 F. sup. 2d 1151, 1173 (D. Utah 2010).  The Ninth Circuit uses a non-exhaustive eight-factor test enumerated in *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341 (9th Cir. 1979) to determine whether a defendant's use of a mark is confusingly similar.

Additionally, a defendant is not liable for trademark infringement if their use is "a use, otherwise than as a mark, of a term or device that is descriptive of and used fairly and in good faith only to describe goods or services of [a] party, or their geographic origin."  15 U.S.C. § 1115(b)(5)(A)-(C).  The "nominative fair use" doctrine allows a defendant to use a trademark when discussing a plaintiff's products or services. *See Cairns v. Franklin Mint Co.*, 292 F.3d 1139, 1151 (9th Cir. 2002). The Ninth Circuit has a three-part test for determining whether something is a nominative fair use of a mark: "[f]irst, the product or service in question must

RANDAZZA | LEGAL GROUP

be one not readily identifiable without use of the trademark; second, only so much of the mark or marks may be used as is reasonably necessary to identify the product or service; and third, the user must do nothing that would, in conjunction with the mark, suggest sponsorship or endorsement by the trademark holder." *New Kids on the Block v. News. Am. Publ'g, Inc.*, 971 F.2d 302 (9th Cir. 1992); *see also Hakkasan LV, LLC v. Wang*, 2015 U.S. Dist. LEXIS 33543, *6-7 (D. Nev. Mar. 17, 2015).

**4.2    The Court Should Grant Summary Judgment in Favor of Opinion on Abbey's Lanham Act Claim**

Abbey argues that Opinion's use of the "Abbey Dental" mark in connection with a page on a consumer review web site that contains review of Abbey creates a likelihood of confusion with consumers by making them think that the <pissedconsumer.com> web site is somehow affiliated with Abbey. This argument is frivolous.

Most importantly, the eight-factor *Sleekcraft* test does not apply here, as Opinion's use of the "Abbey Dental" mark is a nominative fair use. The *Sleekcraft* analysis doesn't apply where a defendant uses the mark to refer to the trademarked good itself." *Toyota Motor Sales, U.S.A., Inc. v. Tabari*, 610 F.3d 1171, 1175 (9th Cir. 2010). "[S]uch use of the trademark is . . . nominative fair use," which is "by definition, not infringement." *Id*. In such cases, "the court applies a different test to evaluate the likelihood of confusion, which 'replaces' the *Sleekcraft* analysis." *Adobe Sys., Inc. v. Christenson*, 891 F. Supp. 2d 1194, 1206 (D. Nev. 2012). In applying the three-factor *New Kids* test, "the court's focus is on the 'reasonably prudent consumer in the marketplace.'" *Id*. (quoting *Tabari*, 610 F.3d at 1176). Once a defendant asserting nominative fair use establishes that it has used the mark to refer to the trademarked good or service, the burden shifts to the plaintiff to show that the defendant's use is not a nominative fair use. *See Tabari*, 610 F.3d

at 1176. This is because "[a] finding of nominative fair use is a finding that the plaintiff has failed to show a likelihood confusion as to sponsorship or endorsement," and the burden of establishing likelihood of confusion is the plaintiff's to bear. *Id*. at 1182-83 (citing *KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.*, 543 U.S. 111, 118 (2004)).

The first issue is Opinion's use of search result copy on Google. The copy that accompanies a search result for term "abbey dental" that leads users to Opinion's web site informs users that they will arrive at a site with reviews of Abbey Dental if they click on the link to Opinion's web site. The Ninth Circuit summed up the weakness of Abbey's argument here when it recognized that internet users

> fully expect to find some sites that aren't what they imagine based on a glance at the domain name or search engine summary. Outside the special case of . . . domains that actively claim affiliation with the trademark holder, consumers don't form any firm expectations about the sponsorship of a website until they've seen the landing page – if then.

*Tabari*, 610 F.3d 1179.

Abbey alleges that, because the copy of a Google search result for reviews on <pissedconsumer.com> "depicts Abbey Dental's name in all capital lettering, but leaves the rest of the heading in lower case lettering," it "lead[s] the user to immediately perceive the heading as affiliated with Abbey Dental." (ECF No. 1 at ¶ 12.) This allegation makes no sense, and does not create any legitimate factual dispute as to confusing similarity. If anything, using ALL CAPS lettering makes copy appear less authentic. Abbey appears to agree with this assessment, as its own copy on Google does not use ALL CAPS lettering. (*See* **Exhibit 9**.) Presumably this unsupported assertion is a vain attempt to distinguish Opinion's search result copy from that of other consumer review sites which contain very similar copy. (*See* ECF No. 1-1 at 2; **Exhibit 9**.)

Abbey's argument on this point is frivolous on its face; Opinion's use is plainly a nominative fair use of the "Abbey Dental" mark; there is no way to direct users to reviews of Abbey without using its mark, Opinion must use the entirety of Abbey's mark to convey this information, and it is doing nothing whatsoever to create any sense of affiliation or sponsorship by Abbey. There is thus no need to apply the *Sleekcraft* factors.[9]  It is simply not plausible to claim that, confronted with a Google search results page consisting largely of results for consumer review sites, that consumers will assume the ad copy "**5 ABBEY DENTAL complaints and reviews @ Pissed Consumer**" is sponsored by and affiliated with Abbey.  Opinion is engaging in precisely the same conduct as every other consumer review web site.  (*See* **Exhibits 5-10**; ECF No. 1-1 at 2.)  Further, how else could a consumer review site discuss the business under review without *naming it*?

Similarly, there is nothing actionable about Opinion's use of the Abbey Dental mark in its <abbey-dental.pissedconsumer.com> sub-domain.  *Tabari* is instructive here, and observed that, when Internet users search for a web site through a search engine

> the consumer will click on the link for a likely-relevant site without paying much attention to the URL.  Use of a trademark in the site's domain name isn't materially different from use in its text or metatags in this context; a search engine can find a trademark in a site regardless of where exact it appears.

*Tabari*, 610 F.3d at 1178-79.  It adopted the reasoning in *Playboy Enters. v. Welles*, 279 F.3d 796 (9th Cir. 2002) and determined that using a trademark as part of a domain name for information purposes is a nominative fair use of the mark, as '"[s]earchers would have a much more difficult time locating relevant websites' if the law outlawed such truthful, non-misleading use of a mark."  *Id*. at 1179.

---

[9]  Although, were the Court to apply them, they would cut similarly (fatally) against the Plaintiff.

Special Motion to Dismiss Pursuant to NRS 41.660 and Motion for Summary Judgment
2:15-cv-02069-GMN-PAL

"So long as the site as a whole does not suggest sponsorship or endorsement by the trademark holder," any temporary uncertainty by a user who mistakenly arrives at a domain name that includes a trademark "does not preclude a finding of nominative fair use." *Id*. It is hard to think of an Internet user who would not be able to figure out that a URL containing a trademark followed by "pissedconsumer.com" is not affiliated with the owner of the trademark. *See, e.g., Bally Total Fitness Holding Corp. v. Faber*, 29 F. Supp. 2d 1161, 1163-64 (C.D. Cal. 1998) (finding that gripe site with domain name <compupix.com/ballysucks> dedicated to Bally's health club did not create likelihood of confusion because no reasonable visitor would assume it was affiliated with, connected with, or sponsored by Bally's).

Even if Internet users could not be trusted to discern that ad copy with the word "reviews" would lead to a review site, or that "abbey-dental" followed by "pissedconsumer" would lead somewhere other than the official Abbey Dental web site, one must look at a web site to determine if its corresponding domain name is confusingly similar. Such use of a trademark can only be confusingly similar if the defendant actively attempts to create a false sense of affiliation with the plaintiff. Opinion has done none of these things. It is immediately apparent to a visitor to <abbey-dental.pissedconsumer.com> that the site is used for consumer reviews and is owned by a company other than Abbey. The consumer reviews for Abbey that are found there are overwhelmingly negative, and so no reasonable user would infer that the reviewers are somehow endorsed by or affiliated with Abbey.

In fact, Opinion has already disposed of this very issue with in another case where a plaintiff attempted to misuse trademark law to remove access to negative reviews. The court in *Ascentive, LLC v. Opinion Corp.*, 842 F. Supp. 2d 450, 462-63 (E.D.N.Y. 2011) found that:

> [w]here, as here, the domain name of a website itself – Ascentive.PissedConsumer.com . . . makes clear that it is not affiliated with trademarks the domain name incorporates and indeed is critical of the companies that own the marks, the use of the marks does not present a likelihood of confusion. Like the word 'sucks,' the word 'pissed' has entered the vernacular as a word instinct with criticism and negativity. Thus, no reasonable visitor to Ascentive.PissedConsumer.com . . . would assume the sites to be affiliated with Ascentive . . ., and PissedConsumer's use of plaintiffs' marks in the various domain names at issue is not likely to cause confusion as to source.

The court then reached the same conclusion as to Opinion's use of the marks at issue on the <pissedconsumer.com> web site itself. *Id*. at 464. It additionally determined that there was no possibility of initial interest confusion; Opinion could not divert customers from the plaintiffs because "[t]here is no competitive proximity between the parties' goods and services; [plaintiffs] are in completely different fields that PissedConsumer." *Id*. at 465. And it further recognized that the advertisements on <pissedconsumer.com> are generated by third parties and could not likely form the basis for trademark infringement liability. *See id*. at 470-71.

Nothing that Opinion has done would create any false impression of affiliation with or sponsorship by Abbey Dental. Opinion operates a consumer review web site, and the only way to discuss a business is to use its name. Opinion can understand that Abbey does not like Internet users to be directed to numerous negative reviews about it, but that is the cost of living in an informed society. *See Neumont Univ. LLC v. Little Bizzy, LLC*, 2014 U.S. Dist. LEXIS 69168 at *35 (D. Nev. May 20, 2014). Abbey should improve the quality of its services rather than abuse intellectual property laws to stifle criticism.

The Court should find that there are no disputed issues of material fact and grant summary judgment in Opinion's favor as to Abbey's Fifth Claim for Relief.

**5.0    ARGUMENT AS TO THE ANTI-SLAPP STATUTE**

**5.1    NRS 41.660 Applies in Federal Court**

Anti-SLAPP statutes apply in federal court. *See Batzel v. Smith*, 333 F.3d 1018, 1025-26 (9th Cir. 2003); *see also Thomas v. Fry's Elecs., Inc.*, 400 F.3d 1206, 1207 (9th Cir. 2005). NRS 41.650 provides that a person who engages in conduct protected under Nevada's Anti-SLAPP statute "is **immune from any civil action** for claims based upon the communication" (emphasis added). Accordingly, just like California's Anti-SLAPP statute, NRS 41.635-670 creates a substantive immunity from certain categories of lawsuits and is substantive in nature.

**5.2    Prong One: Abbey's Suit is Based Upon Protected Conduct**

**5.2.1    Operating a Consumer Review Web Site Is Protected Conduct**

In determining whether a defendant makes a successful showing on the first prong of the Anti-SLAPP analysis, courts do not look to the particular cause of action pled by the plaintiff, but rather looks to whether the suit is based on the exercise of speech protected under the statute. *See Church of Scientology v. Wollersheim* (1996) 42 Cal. App. 4th 628, 652 (holding that, with an Anti-SLAPP motion, the "nature or form of" the action is "not what is critical but rather that it is against a person who has exercised certain rights"). Courts typically look to "the 'gravamen or principal thrust' of the plaintiff's claims to determine whether they arise from the defendant's constitutionally protected petitioning or free speech rights." *In Re Episcopal Church Cases* (2009) 45 Cal. 4th 467, 477. A defendant may take advantage of the Anti-SLAPP statute if the "defendant's conduct underlying the plaintiff's cause of action" was "*itself*" an "act in furtherance of the right of petition or free speech." *City of Cotati v. Cashman*, (2008) 29 Cal. 4th 69, 78 (emphasis original).

The term "issue of public interest" for Anti-SLAPP purposes is defined broadly as "any issue in which the public is interested." *Nygard, Inc. v. Uusi-Kerttula*, 159

Cal. App. 4th 1027, 1042 (2008). "The issue need not be 'significant' to be protected by the anti-SLAPP statute – it is enough that it is one in which the public takes an interest." *Id*. The right of consumers to have informed access to the quality of Abbey's services is an issue of public interest. Consumer complaints of non-criminal conduct by a business can constitute matters of public concern. *See Mt. Hood Polaris, Inc. v. Martino (In re Gardner)*, 563 F.3d 981, 989 (9th Cir. 2009) (hereinafter "*Gardner*") (finding that a business owner's refusal to give a refund to a customer who bought an allegedly defective product was a matter of public concern); *see also Manufactured Home Cmtys., Inc. v. Cnty. of San Diego*, 544 F.3d 959, 965 (9th Cir. 2008) (treating claim that a mobile home park operator charged excessive rent as a matter of public concern). This collection of consumer reviews is a "[c]ommunication made in direct connection with an issue of public interest . . . in a public forum." NRS 41.637(4).

Statements containing consumer information, to the extent they involve warnings to aid other consumers, constitute matters of public interest under Anti-SLAPP statutes. *See Willbanks v. Wolk* 121 Cal. App. 4th 883, 898 (2004) (finding statements that were a warning not to use plaintiffs' services were on a matter of public interest)*; see also Carver v. Bonds*, 135 Cal. App. 4th 328, 343-344 (2005) (finding that statements serving as a warning against Plaintiff's method of self-promotion, and that were provided along with other information to assist patients in choosing doctors, were protected under Anti-SLAPP statute).

In discussing the importance of consumer reviews, the esteemed Judge Jennifer Dorsey wrote:

> Consumer reporting plays a vital role in ensuring that a company's desire to maximize profit, if abused, will not go unnoticed; and online fora for the exchange of those ideas play an increasingly large role in informing consumers about the choices that make sense for them.

RANDAZZA | LEGAL GROUP

*Little Bizzy,* 2014 U.S. Dist. LEXIS 69168 at *35.  Speech meant to inform consumers is protected, and consumers '"clearly have an interest in matters which affect their roles as consumers, and peaceful activities . . . which inform them about such matters are protected by the First Amendment'."  *Paradise Hills Assocs. v. Procel* 235 Cal. App. 3d 1528, 1544 (1991) (citing *Concerned Consumers League v. O'Neill*, 371 F. Supp. 644, 648 (E.D. Wis. 1974)).

A generally accessible web site is considered a public forum for purposes of Anti-SLAPP statutes.  *See Cole v. Patricia A. Meyer & Associates* (2012) 206 Cal. App. 4th 1095, 1121.  The operation of such a website is protected activity for Anti-SLAPP purposes.  *See Wilbanks v. Wolk* (2004) 121 Cal. App. 4th 883, 897; *see also Vogel v. Felice* (2005) 127 Cal. App. 4th 1006, 1015; *Little Bizzy*, 2014 U.S. Dist. LEXIS 69168 at *35.

### 5.2.2 Abbey's State Law Claims Are Based Upon Opinion's Protected Conduct

Abbey carefully avoids making a claim based on the content of any given review on <pissedconsumer.com>, instead attempting to premise liability on industry-standard practices that are necessary to allow Internet users to find reviews about Abbey.  It lets its true intentions slip, however, in paragraph 17 of the Complaint.  Abbey asserts "[w]hen the user clicks the link to abbey-dental.pissedconsumer.com, they are again led to webpage which contains advertisements of Plaintiff's direct competitors.  **The false information turns customers away,** while presenting advertisements for Plaintiff's direct competitors." (ECF No. 1 at ¶17) (emphasis added.)  The "false information" here is referring to content on Opinion's web site, which contains consumer reviews of Abbey.  The only reasonable interpretation of this paragraph is that Abbey is claiming its alleged harm is the result of consumers going to

Special Motion to Dismiss Pursuant to NRS 41.660 and Motion for Summary Judgment
2:15-cv-02069-GMN-PAL

<pissedconsumer.com>, seeing reviews of Abbey, and deciding to take their business elsewhere.

Furthermore, Abbey's claims are centered on the theory that Opinion is liable for directing consumers to <pissedconsumer.com> through its use of industry-standard sub-domains and Google ad copy. To ensure that users actually see reviews about a company, a consumer review web site **must** use a given business's name in a sub-domain and ad copy. To restrict such a site from doing so would be to effectively remove web pages containing reviews of the business from the Internet, as no one would be able to find them while performing an Internet search. Abbey's prayer for relief makes this even clearer, as it seeks both a preliminary and permanent injunction barring Opinion from using Abbey's name on <pissedconsumer.com>.[10] (*See* ECF No. 1 at 15, ¶ 3.)

It is apparent from the Complaint that Abbey claims it is losing business because Internet users are coming across negative reviews of it on Pissed Consumer. There is no fraud or intellectual property infringement here; rather, Abbey wants to eliminate any ability to actually find negative reviews of it on <pissedconsumer.com> by eliminating all of Opinion's sign posts to this content. As operating a consumer review web site is activity protected under the statute, and Abbey's claims premise liability on Opinion's ability to direct users to its consumer review web site, Abbey's claims are based upon conduct protected under Nevada's Anti-SLAPP statute. *See John*, 125 Nev. at 752 (stating that Anti-SLAPP statute is intended to prevent litigants from "abus[ing] the judicial

---

[10] The requested injunction is sought in terms of misappropriation and commercial use of "infringing marks," but these terms do not describe Opinion's conduct here. If Abbey believes that Opinion's conduct amounts to misappropriation and trademark infringement, then it requests a complete ban on any meaningful use of Abbey's name on <pissedconsumer.com>.

RANDAZZA | LEGAL GROUP

process by chilling, intimidating, and punishing individuals for their involvement in public affairs").

Even assuming *arguendo* <u>some</u> of Opinion's conduct is not protected under the Anti-SLAPP statute (which Opinion denies), such conduct is inextricably linked with protected speech, making Abbey's claims "mixed" causes of action for Anti-SLAPP purposes. These "mixed cause[s] of action [are] subject to the Anti-SLAPP statute if at least one of the underlying acts is protected conduct, unless the allegations of protected conduct are merely incidental to the unprotected activity." *Lauter v. Anoufrieva*, 642 F. Supp. 2d 1060, 1109 (C.D. Cal. 2008) (emphasis added); *see also Salma v. Capon*, 161 Cal. App. 4th 1275, 1287 (2008) (holding that a cause of action based on both protected and unprotected activity under California's Anti-SLAPP statute is subject to an Anti-SLAPP motion); *A.F. Brown Electrical Contract, Inc. v. Rhino Electric Supply, Inc*, 137 Cal. App. 4th 1118, 1125 (2008) (a "cause of action is vulnerable to a special motion to strike under the anti-SLAPP statute only if the protected conduct forms a substantial part of the factual basis for the claim"); *and see Peregrine Funding, Inc. v. Sheppard Mullin*, 133 Cal. App. 4th 658, 675 (2005) (finding that because plaintiffs' claims "are based in significant part on [defendant's] protected petitioning activity," the first anti-SLAPP prong was satisfied").

All of Abbey's state law claims, and all of Opinion's complained-of acts, are "inextricably tied" to its protected activity of providing an online platform for consumer reviews of businesses and professionals. Abbey brought this claim to remove this protected and critically important speech from the eyes of would-be customers. Opinion has met its burden under the first prong of NRS 41.660. The burden now shifts to Abbey to show by a preponderance of the evidence that it has a probability of prevailing on its claims.

### 5.3 Abbey Cannot Show a Likelihood of Prevailing

NRS 41.660 defines a plaintiff's burden of proof as "the same burden of proof that a plaintiff has been required to meet pursuant to California's anti-Strategic Lawsuit Against Public Participation law as of the effective date of this act." NRS 41.665(2). Abbey cannot simply make vague accusations or provide a mere scintilla of evidence to defeat Opinion's motion. Rather, to satisfy its evidentiary burden under the second prong of the Anti-SLAPP statute, Abbey must present "substantial evidence that would support a judgment of relief made in the plaintiff's favor." *S. Sutter, LLC v. LJ Sutter Partners, L.P.*, 193 Cal. App. 4th 634, 670 (2011); *see also Mendoza v. Wichmann*, 194 Cal. App. 4th 1430, 1449 (2011) (holding that "substantial evidence" of lack of probable cause was required to withstand Anti-SLAPP motion on malicious prosecution claim.) Abbey cannot make this showing.

### 5.3.1 Abbey Cannot Show a Likelihood of Prevailing on Its Common Law Misappropriation of Trade-Name or Common Law Trade-Name Infringement Claims.

There do not appear to be any Nevada cases that discuss a claim for common law misappropriation of a trade name. Presumably, if such a cause of action even exists, it is similar to an unfair competition claim under the Lanham Act. Accordingly, Opinion hereby adopts and incorporates its analysis in Section 4.0, *supra*, here. For those same reasons, Abbey cannot show a likelihood of prevailing on its common law misappropriation of trade-name claim.

There is only one Nevada case that discusses tradename infringement as a cause of action in any detail. *See A.L.M.N., Inc. v. Rosoff*, 104 Nev. 274 (1988). In determining the contours of this claim, the Nevada Supreme Court relied primarily on federal trademark cases applying the Lanham Act. *See id.* at 282 (citing federal cases applying Lanham Act in enumerating multi-factor likelihood

of confusion test). As there is no other guidance as to the elements or specifics of a tradename infringement claim, it only makes sense to employ the same analysis as used for Abbey's Lanham Act claim. Opinion thus incorporates the arguments in Section 4.0, *supra*, here. For the same reasons, Abbey has no likelihood of prevailing on its tradename infringement claim.

### 5.3.2 Abbey Cannot Show a Likelihood of Prevailing on Its Claim Under NRS 41.600 and 598.0915.

NRS 41.600 provides for a civil cause of action for "any person who is a victim of consumer fraud," which is defined as including "a deceptive trade practice as defined in NRS 598.0915 . . . ." NRS 598.0915 forbids, in relevant part, "[k]nowingly mak[ing] a false representation as to the source, sponsorship, approval or certification of goods or services for sale or lease," as well as "[k]nowingly mak[ing] a false representation as to affiliation, connection, association with or certification by another person." NRS 598.0915(2)-(3). To prevail on a claim under this statute, a plaintiff must prove that "(1) an act of consumer fraud by the defendant (2) caused (3) damage to the plaintiff." *Picus v. Wal-Mart Stores, Inc.*, 256 F.R.D. 651, 658 (D. Nev. 2009). In cases of damages allegedly resulting from an affirmative misrepresentation by a defendant, the element of causation also includes reasonable reliance on the alleged misrepresentation. *See id*.

There do not appear to be Nevada or federal cases interpreting subsections 2 or 3 in any relevant context, as the only situations in which either one is discussed are allegedly fraudulent mortgages or real estate transactions, and the courts there dismissed the claims at issue for insufficient pleading. *See, e.g., Patterson v. Grimm*, 2010 U.S. Dist. LEXIS 120901, *10-11 (D. Nev. Nov. 1, 2010). Nevertheless, there is not much guesswork in concluding that there is nothing fraudulent about Opinion's conduct here. As explained in Section 4.0,

*supra*, Opinion is accurately using Abbey's trademark to direct Internet users to a web page that contains consumer reviews of Abbey. Opinion is not taking anyone's money or spreading lies about random businesses. In fact, it is difficult to guess what the alleged damage to Abbey is as a result of these alleged fraudulent business practices. Opinion does not provide competing services, and only dentists are likely to see advertisements for competitors of Abbey on Opinion's web site. The only way Abbey could possibly be harmed is because people are going to Opinion's web site, reading negative reviews of Abbey, and taking their business elsewhere. That is the opposite of consumer fraud; it is consumer empowerment.

None of Opinion's actions as alleged in the Complaint constitute fraudulent or deceptive practices under NRS 41.600 or 598.0915. Accordingly, the Court should dismiss Abbey's First Claim for Relief with prejudice.

### 5.3.3   No Likelihood of Prevailing on the Fraud Claim.

Abbey's common law fraud claim fails for the same reasons its statutory consumer fraud claim fails. The Nevada Supreme Court in *Betsinger v. D.R. Horton, Inc.*, 232 P.3d 433, 435-46 agreed with Arizona Court of Appeals that "the purpose of the consumer fraud protection statute was to provide consumers with a cause of action that was easier to establish that common law fraud," and concluded that consumer fraud claims under NRS 598 had a lower burden of proof than common law claims. *See id*. (quoting *Dunlap v. Jimmy GMC of Tucson, Inc.*, 136 Ariz. 338 (Ariz. Ct. App. 1983). The Court also determined that Nevada's securities fraud statute, while containing the term "fraud," was not limited to common-law fraud or deceit. *See Sec'y of State v. Tretiak*, 117 Nev. 299, 309 (2001).

Taken together, these cases establish that statutory fraud claims in Nevada are more permissive than common law fraud claims and cover a wider range of conduct. Accordingly, if a plaintiff cannot establish consumer fraud under

RANDAZZA | LEGAL GROUP

NRS 41.600 or 598.0915, then it has no hope of establishing a claim under common law fraud.  The Court should dismiss this claim with prejudice.

## 6.0    CONCLUSION

Abbey's suit assumes that informing consumers of one's experiences with a business is consumer fraud, and even **mentioning** a company's name is trademark infringement.  The Court should see this SLAPP suit for what it is and (1) dismiss Abbey's state law claims with prejudice; (2) award Opinion the fees it has incurred in defending itself from Abbey's state law claims pursuant to NRS 41.670(1)(a); and (3) impose a sanction of $10,000 against Abbey under NRS 41.670(3)(a).  The Court should further grant summary judgment in Opinion's favor as to Abbey's Fifth Claim for Relief under the Lanham Act.


Dated this 7th day of December, 2016.

Respectfully Submitted,

RANDAZZA LEGAL GROUP, PLLC

/s/ Marc J. Randazza
Marc J. Randazza (NV Bar No. 12265)
Alex J. Shepard (NV Bar No. 13582)
4035 S. El Capitan Way
Las Vegas, NV 89147
Tel: (702) 420-2001
Fax: (702) 420-2003
ecf@randazza.com

*Attorneys for Defendant,*
*Consumer Opinion LLC*

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on December 7, 2016, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I further certify that a true and correct copy of the foregoing document being served via transmission of Notices of Electronic Filing generated by CM/ECF.

Respectfully Submitted,

_____
Employee,
Randazza Legal Group, PLLC